

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 28, 1952

Affirmed by *Daney* *v. Hunt*
*194 S.W. 2d 159 (24.*
*Civ. App. 1956 error*
*ref. N.R.E.)*

Hon. Raymond E. Magee
County Attorney
Galveston County
Galveston, Texas

Dear Sir:

Opinion No. V-1513

Re: Procedure to place a name
on the ballot at the gen-
eral election as an inde-
pendent candidate for a
precinct office.

In your request for an opinion you state that
a group of Galveston County citizens have approached
the County Judge with regard to running an independent
candidate for the position of justice of the peace in
the forthcoming general election. In this connection,
you have requested a construction of Section 230, Texas
Election Code (V.C.S. Election Code, Art. 13.53), which
reads:

"Independent candidates for office at
a county, city, or town election may have
their names printed upon the official bal-
lot on application to the County Judge, if
for a county office, or to the mayor, if
for a city or town office, such application
being in the same form and subject to the
same requirements herein prescribed for ap-
plications to be made to the Secretary of
State in case of State or district independ-
ent nomination; provided, that in county
elections it shall be necessary for nomina-
tion of independent candidates for the in-
dependent candidate to file a petition with
the County Judge, signed by five per cent
(5%) of the entire vote cast in such county
at the last general election, endorsing
such candidate for a particular county of-
fice. And provided further, in elections
for a city or town office, it shall not be
necessary that independent candidates be
nominated, but anyone otherwise qualified
may have his name printed upon the official
ballot for a particular office by filing
his sworn application with the Mayor at

least thirty (30) days prior to the
election day and by paying such filing
fees as may be required by Statute or
by charter provision."

. The questions which you have asked are:

(1) Does Section 230 apply to precinct
offices?

(2) If Section 230 does apply to pre-
cinct offices, is the percentage of voters
who must sign the application based on the
total number of votes cast in the entire
county or only on the number of votes in
that precinct?

Section 230 does not expressly mention pre-
cinct offices. It states that independent candidates
for a county office may have their names placed on the
ballot on application to the county judge, but it con-
tains no other provision which might be construed to
include candidates for precinct offices. We must de-
termine whether the Legislature thereby intended to ex-
clude the placing of the names of independent candidates
for precinct offices on the ballot or whether it intended
to embrace them within the term "county office."

In Section 237 of the Election Code, the words
"county office" are defined to mean "any office to be
filled by the choice of the voters residing in only one
(1) county or less than one (1) county." This defini-
tion clearly includes precinct offices. However, we are
of the opinion that the definitions in Section 237 were
intended to apply only to the provisions relating to cam-
paign expenditures found in Chapter 14 of the Election
Code, of which Section 237 is a part. We must therefore
arrive at the legislative intent in Section 230 independ-
ently of the definition set out in Section 237.

Precinct offices are mentioned in numerous
places throughout the Election Code, and generally the
statutes applicable to them specify them by that name.
However, the term usually appears in the phrase "county
and precinct office," "county or precinct office," or
some similar phrase linking these two classifications.
See Secs. 25, 118, 185, 190, 203, 204, 208, 231, 233.
The election procedures for these two types of offices

are consistently identical: application for a place on the primary ballot is filed in the same way; returns are canvassed and certificates of nomination and of election are issued in like manner. It is quite natural that county and precinct offices are treated similarly, since precincts are subdivisions of the county and the precinct officers -- justices of the peace and constables as well as members of the commissioners' court -- are under the general administrative jurisdiction of the county. Section 24, Article V of the Constitution, which provides for the removal of "county judges, county attorneys, clerks of the district and county courts, justices of the peace, constables, and other county officers," clearly treats a justice of the peace as a county officer.

Offices which are filled at the general election are ordinarily classified as state, district, county and precinct. We believe the Legislature intended in Sections 227 and 230 to authorize nominations of independent candidates for all offices to be filled at the general election. Provision is made for nominating candidates for state and district offices in Section 227. Although precinct offices are not mentioned by that name in Section 230, we are of the opinion that they are included within the term "county office" as used in that section. As we have pointed out, precinct and county offices are treated similarly throughout the election processes, and there is no apparent reason for excluding precinct offices in the nomination of independent candidates. Accordingly, your first question is answered in the affirmative.

In making this holding we are not unmindful of the dictum in Hamilton v. Monroe, 287 S.W. 304 (Tex.Civ. App. 1926, error dism. 116 Tex. 153, 287 S.W. 306), to the effect that the words "county offices" in the election laws meant those to be filled by the electorate of the entire county. Since the court relied in part on the definition of "county nomination" then contained in Article 3168, V.C.S. (now Section 237 of the Election Code) as being the nomination for any office to be filled by the choice of the voters residing in only one county or less than one county, it cannot be readily understood how the court reached the conclusion it did. On the other hand, in Fowler v. Thomas, 275 S.W. 253 (Tex.Civ.App. 1925, error dism.) and later cases announcing the same rule, it was held that the words "county office" in the election

contest statute (Art. 3041, R.C.S. 1925) included the office of school trustee, since a school district is a subdivision of the county.

In your second question you ask how the percentage of voters who must sign the application is to be determined. Section 230 provides that the application shall be signed by five per cent of the entire vote cast in such county at the last general election. If it were not for the word "entire," we would have no difficulty in concluding that this provision meant, for a precinct nomination, five per cent of the vote cast in that particular precinct of the county. We think the purpose of requiring a minimum number of signatures is to show that there is a sufficient number of qualified voters supporting the nomination of the proposed candidate to justify granting him a place on the ballot. It would logically follow, and we so hold, that the persons signing the application for a precinct nomination must be qualified voters of the precinct. Since the electors in only a portion of the county will be voting on a precinct office, the same assurance of support for a precinct candidate is gained from requiring endorsement by five per cent of the votes cast in the precinct as from requiring five per cent of the entire county vote for a candidate who is voted on by the electors of the county as a whole. It would be reasonable to conclude that the Legislature intended that the percentage of endorsements required for precinct nominees be computed on the basis of votes cast in the precinct.

When construed in conjunction with Section 227, it becomes apparent that the term "entire vote cast" means the number of votes cast by all factions, regardless of whether they were cast for regular party nominees, independent candidates nominated by petition, or candidates whose names were written in. Thus it is seen that this provision does not necessarily mean the vote cast in the entire county. If the nomination is for an office to be filled by the voters of a precinct of the county, we think it requires only that the application be signed by five per cent of the entire vote cast in that precinct.

There is another reason for giving the statute this construction. In a county having eight justice precincts, for example, it is possible that the number of qualified electors in that precinct would be less than

ten per cent, or even less than five per cent, of the vote cast in the entire county. Since the electors signing the application for a precinct candidate must be residents of that precinct, a requirement that the application be signed by five per cent of the entire county vote would amount to a virtual assurance of election before the candidate could have his name placed on the ballot, or might even prevent independent nominations altogether. Certainly the Legislature could not have intended the latter result. We are also of the opinion that it had no intention of requiring an endorsement which would be tantamount to a guaranty of election before a person may become an independent candidate.

We are informed that nomination of independent candidates for county and precinct offices is customary in some of the counties of this State. We have confirmation of the practice followed in only one of these counties. The County Attorney of Guadalupe County has advised us that candidates for county office, including precinct offices, have run as independent nominees in that county for many years, and that the number of signatures required for precinct candidates is computed on the basis of the votes cast in the precinct. This practical construction which has been given Section 230 lends support to the conclusions we have reached. Greenwood v. City of El Paso, 186 S.W.2d 1015 (Tex.Civ.App. 1945).

## SUMMARY

Independent candidates for precinct offices may be nominated in accordance with Section 230, Texas Election Code (V.C.S. Election Code, Art. 13.53). They are included within the term "county office" as used in that section.

The number of qualified voters who must sign the application of an independent candidate for a precinct office is five per cent of the entire vote cast in

that precinct at the last general election. The signers must be qualified voters of the precinct.

APPROVED:

J. C. Davis
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

MKW:wb

Very truly yours,

-PRICE DANIEL
Attorney General

By *Mary K. Wall*
     Mary K. Wall
          Assistant